# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: | Chapter: 7 |
| | Case No.: 08-31457 |
| **MICHAEL FRANCIS PUSATERI, III** | |
| | |
| SS:    XXX-XX-1888 | |
| Debtor. | |
| | |
| **CONGRESSIONAL FEDERAL CREDIT UNION** | |
| Plaintiff, | |
| v. | |
| | Adversary No.: 08-03149 |
| **MICHAEL FRANCIS PUSATERI, III** | |
| Defendant. | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR AN ORDER GRANTING ATTORNEY'S FEES, COSTS, AND EXPENSES UNDER 11 U.S.C. § 523(d) AND 28 U.S.C. § 1927

Michael Pusateri, by and through undersigned Counsel, hereby moves this Court for the issuance of an **ORDER GRANTING ATTORNEY'S FEES, COSTS, AND EXPENSES UNDER 11 U.S.C. § 523(d) and 28 U.S.C. § 1927** in his favor on the basis that Plaintiff's request for a determination of dischargeability in this adversary proceeding is in the process of being voluntarily terminated, the debt will be discharged, and Plaintiff had no legal basis in law or fact, failed to perform any pre-filing due diligence, filed three (3) Complaints containing various and changing, but feckless, theories for recovery, refused to engage in meaningful settlement negotiations [1] and unreasonably and vexatiously multiplied the proceedings in the case

---

[1] Except for a single, verbal solicitation made to Michael Pusateri's Counsel after the filing of the initial Complaint in which Mr. Angus asked Mr. Pusateri **to** make an offer to CFCU to settle its claim.

(including the resolution of this issue) for more than a year.

## PROCEDURAL SUMMARY

Michael Pusateri filed a Voluntary Chapter 7 Petition on July 16, 2008 following an extended decline in his personal health and financial conditions. On October 18, 2008, Heather Culp, local Counsel for Rod Angus, attorney for Congressional Federal Credit Union ("CFCU"), filed a Motion to Extend Time to Object to Discharge/Dischargeability. In response thereto, on October 21, 2008, David Badger, Counsel for Michael Pusateri sent a letter to Ms. Culp explaining Mr. Pusateri's inability to work due to his medical conditions had resulted in the necessity of filing a Chapter 7 bankruptcy. The letter is attached hereto as Exhibit "A". Enclosed with the letter was a detailed three (3) page summary of Mr. Pusateri's medical condition prepared by his physician declaring him disabled and unable to work. With full knowledge of Mr. Pusateri's medical condition. Plaintiff, with no apparent review of the CFCU accounts' history or any other factual or legal investigation, filed a "boilerplate" Adversary Complaint and two (2) Amended Complaints to determine the dischargeability of debt related to Mr. Pusateri's Visa credit card account and seeking a judgment of $33,845.30 blindly alleging, *inter alia*, fraud, inability to repay, luxury goods or services charged within the 90 day presumption period, material misrepresentations with regard to the card and false financial statements - all theories found to be baseless by discovery initiated by Mr. Pusateri and conducted in Northern Virginia at great expense and inconvenience.

A complete procedural history, including a summary of the various Complaints can be found in Defendant's Response and Counterclaims in Opposition to Plaintiff's Motion for Voluntary Dismissal of Second Amended Complaint to Determine Dischargeability of Debt. [Docket No. 46]

## PLAINTIFF'S LEGAL / FACTUAL THEORIES

A brief summary of Plaintiff's legal theories' factual basis, and the testing that totally

debunked each:

**ALLEGATION:**   Defendant affirmatively represented to Plaintiff that he had the intention and ability to repay the Plaintiff for the charges on the Visa account, the representations were knowingly false, and were relied upon by the Plaintiff.

**REBUTTED BY:**   Plaintiff has provided no support whatsoever for these allegations. Defendant's deposition testimony reflects that he **did** intend to repay the charges, and in fact did continue to make payments on the card until the month he filed his Chapter 7 petition. (Deposition of Michael Pusateri, Exhibit "B", pp (83)). [2]

**ALLEGATION**:   Defendant's financial situation clearly illustrates that he lacked the ability to repay Plaintiff.

**REBUTTED BY**:   Defendant's deposition testimony that he intended to repay the charges with the proceeds received from the sale of his house and/or the money he had remaining in his bank account. (Deposition of Michael Pusateri, pp(83-85)). Further, Mr. Pusateri paid off the balance on his car loan of $17,000 in May to CFCU just two months prior to filing - a preference being pursued by the Chapter 7 Trustee. In his deposition he states "I attempted to sell my house. And my intention was I was going to sell it and pay things off...."

**ALLEGATION**:   A substantial portion of the outstanding balance represents luxury goods or services less than 90 days prior to the filing of the Petition

**REBUTTED BY**:   Attached hereto, as Exhibit "C", Counsel for Michael Pusateri has created a summary of all charges made on the Visa card in excess of $100 in the 90 days prior to filing, with explanations as to the charges by Mr. Pusateri in his deposition. This summary makes clear that none of the included charges would be considered "luxury goods or services" as defined in 11 U.S.C. § 523(a)(2)(c)(ii)(II) rendering the presumption of nondischargeability inapplicable.

**ALLEGATION**:   The Credit Applications furnished by Defendant to establish a Visa Account and increase the credit limit on the Visa Account were materially false and significantly overstated the amount of Defendant's income and was published with the intent to deceive Plaintiff.

**REBUTTED BY**:   Plaintiff never identified the "false"and deceptive documents in which Mr. Pusateri allegedly overstated his income. On the Credit Application for the purchase of a Land Rover, Plaintiff entered "N/A" for both Gross Monthly Salary and Source of Other Income. Loan applications were historically approved with notations by the CFCU Credit Committee noting Defendant's excellent credit history without requiring actual income

---

[2]Michael Pusateri, in response to Mr. Badger's question "Did you intend to repay the Congressional Federal Credit Union" answered "Yes", and in response to Mr. Badger's question "How were you going to do that?" responded "With my bank account and the sale of my house." (Deposition of Michael Pusateri p 85.)

stated. When Plaintiff increased the credit limit on Mr. Pusateri's Visa on 9/19/06, Mr. Pusateri had a credit score of 700. The Visa Credit Committee Loan Review dated 9/19/06 indicated Defendant had $199,000.00 on deposit at CFCU. (Exhibit "D").

**ALLEGATION**:   Defendant utilized the Visa Account to make purchases while he was insolvent and in contemplation of filing bankruptcy.

**REBUTTED BY**:   Mr. Pusateri's initial consultation with David R. Badger, P.A. was June 12, 2009. Mr. Pusateri's deposition testimony states that he considered bankruptcy as a last resort and once he had made the decision to file a bankruptcy it was a "very short" period of time between the decision and his actual filing. (Deposition of Michael Pusateri, pp 35-36). The Credit Report of Mr. Pusateri dated 7/14/08 and attached as Exhibit "E", closely indicates that Defendant was current on ALL credit accounts through the date of the case filing (including his mortgage payments of $6,638.00 on his house being marketed for sale) - clearly an effort to meet financial obligations rarely duplicated among Chapter 7 debtors and unknown to Plaintiff which didn't even obtain a credit report before branding Mr. Pusateri a "Fraud".

### AUTHORITY IN SUPPORT OF MICHAEL PUSATERI'S MOTION FOR ATTORNEY'S FEES UNDER 523(d)

Section 523(d) of the Bankruptcy Code provides:

> "[i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court **shall** grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." (emphasis added)

As interpreted by United States Bankruptcy Courts, "the language of § 523(d) is **mandatory**, a creditor is on statutory notice that if it files an adversary proceeding against a consumer debtor under § 523(a)(2) without substantial justification, the court will award the debtor her costs and reasonable attorney's fees." *See, e.g.,* MBNA America, N.A. v. Vehlewald, 2006 Bankr. LEXIS 4052 (E.D.Mo. 2006) (emphasis added).

Plaintiff, in its three (3) Complaints (the original Complaint filed November 2008, the First Amended Complaint filed February 2009, and the Second Amended Complaint filed April

2009), alleged, *inter alia*, that "[a] substantial portion of the charges on the Visa Account were incurred by Michael Pusateri for luxury goods or services less than 90 days prior to the filing of the Petition...Such charges are presumed to be nondischargeable [under] 11 U.S.C. § 523(a)(2)(C)(i)(I)." Second Amended Complaint, ¶17. These allegations were unfounded. Plaintiff, despite repeated formal and informal requests from Counsel for Michael Pusateri, failed to ever specify which charges Plaintiff alleged were luxury goods or services relied upon giving rise to the statutory presumption. Instead, Ms. Culp sent a letter to Counsel for Michael Pusateri stating that "all charges from January 1, 2008 forward should be held nondischargeable" under the theory that Mr. Pusateri knew of his illness and knew that he would not be able to earn an income to cover his expenses, and secondarily, that "all charges within the 90 day period prior to the petition date are nondischargeable pursuant to 523(a)(2)(C)(i)(I)" (The letter from Ms. Culp to Mr. Badger is attached hereto as Exhibit "F"). While Michael Pusateri did have his first surgery on January 3rd, 2008, it was <u>after</u> this surgery and due to complications from it and over a period of several months he became "very, very sick". (Deposition of Michael Pusateri, pp(41)). Only after Michael Pusateri has invested extraordinary time and money in defending this action, did Plaintiff seek to simply withdraw its claims and walk away, because the deposition testimony of <u>NONE</u> of Plaintiff's three (3) witnesses supported <u>ANY</u> allegations in <u>ANY</u> of the Complaints.

In light of Plaintiff's complete failure to plead facts or a legal theory to justify a claim under 523(a)(2), Michael Pusateri moves the Court to grant judgment in his favor for the costs of, and reasonable attorney's fees for, the proceeding under Section 523(d) of the Bankruptcy Code. The facts clearly indicate, and Plaintiff cannot contest the Visa debt is a consumer debt which has been discharged and Plaintiff's various complaints sought to contest <u>its</u> dischargeability Accordingly, Defendant suggest that the only remaining issues are: (1)

Plaintiff's lack of substantial justification, (2) the existence of special circumstances making an award unjust. In support thereof, Michael Pusateri cites the cases below.

The case of AT&T Universal Card Services Corp. v. Arroyo is instructive. 205 B.R. 984 (S.D.Fla. 1997). In *Arroyo*, Plaintiff AT&T initiated an adversary proceeding seeking to have the debtor's debt declared nondischargeable pursuant to § 523(a)(2)(A). *Arroyo* has uncanny similarities to Mr. Pusateri's case. In *Arroyo* the record showed that AT&T conducted no pre-filing discovery nor did a representative of AT&T attend the debtor's 341 Meeting of Creditors. *Id*. at 987. At trial, which the Court pointed out "lasted six boring hours", AT&T did not provide "a scintilla of evidence of fraud, nor any proof of reliance". *Id.* at 986. The only evidence on the subject came from the debtor himself "who testified that he always intended to 'pay the money back'". *Id.* (quotations in original). The debtor in *Arroyo* was required to file an answer to one adversary complaint, be deposed, attend a single deposition of Plaintiff's witness, respond to discovery, file a Motion to Compel, and attend trial. Judge Cristol determined that AT&T's actions with regard to the unjustified adversary proceeding "wasted the time of all concerned, prevented Debtor's counsel from doing other productive work", and awarded attorneys' fees in the amount of $7,200.00 and fee enhancement in the amount of $5,000.00. *Id.*

A more recent case is *In re: Vehlewald*, 2006 Bankr. LEXIS 4052. In *Vehlewald*, the Court examined the statutory requirement for granting a prevailing debtor costs and attorney's fees: "because the language of § 523(d) is mandatory, a creditor is on statutory notice that if it files an adversary proceeding against a consumer debtor under § 523(a)(2) without substantial justification, the court will award the debtor her costs and reasonable attorney's fees." *Id.* at 4054. The Court in *Vehlewald* held that in order to fulfil the requirement of "substantial

justification" a creditor must "make a reasonable investigation of the facts and law supporting its claim **before** filing the adversary complaint... [and] a creditor's position is not substantially justified it if simply files the adversary complaint under § 523(a)(2) and **then** considers the merits of its position at a later point." *Id.* at 4056. Interestingly, in *Vehlewald*, the Court noted "that the attorney Weiss has a history of filing adversary complaints under § 523(a)(2) and then either taking a default judgment or dismissing the complaint if the debtor files an answer". *Id.* Defendant believes that this is the exact pattern and practice that Plaintiff's Counsel, Mr. Angus, utilizes and, in support thereof, directs this Court to the many boilerplate complaints filed by Mr. Angus which are attached to Defendant's Response and Additional Counterclaims in Opposition to Plaintiff's Motion For Voluntary Dismissal of Second Amended Complaint to Determine Dischargeability of Debt.      (Docket No. 46)³

In further support of his position, Defendant cites of *Southwest Fin. Of Alamogordo, Inc. v. Valdez*, 2007 Bankr. LEXIS 1398 (D. N.M. 2007) in which the Court held "[a]n award of fees under 11 U.S.C. § 523(d) is appropriate 'whenever the court finds that the plaintiff proceeded with its case past a point where Plaintiff knew or should nave [sic] known that it could not carry its burden of proof'". *Id.* Defendant argues that Plaintiff, at the very latest, should have known it could not carry its burden of proof when Plaintiff filed (without seeking court permission) its First Amended Complaint in which Plaintiff reduced the amount of recovery originally sought by two-thirds and changed his legal theories for the first of two (2) times.

Directly on point is the case of *In re Chinchilla*, in which the Court awarded costs and

---

³Counsel for Mr. Pusateri finds it interesting that Mr. Angus continues to file boilerplate pleadings. During the time the instant Adversary Proceeding has been pending, on August 31, 2009, Mr. Angus filed the Complaint in in *PWC Employees Credit Union v. Brock* (included herein as a part of Exhibit "G") which incorporated his boilerplate allegations of false financial statements and overstated income as well as intent not to repay. The only difference being that in that complaint, Mr. Angus added the ineffective limiting language that the Court grant damages "to the extent" the debtor provided false financial statements. Attached hereto as Exhibit "G" is a comparison of 4 complaints filed by Mr. Angus.  Language virtually identical to that duplicated in the Pusateri Complaints shows that the complaints are conclusively "boilerplate".

attorney's fees after AT&T agreed to a voluntary dismissal of its adversary complaint. 202 B.R. 1010, (S.D. Fla. 1996). Granting the Chinchillas' costs and attorney's fees, the Court held that § 523(d) "is intended to prevent a creditor from bringing a dischargeability action in order to coerce a settlement from an honest debtor who cannot afford to litigate." (citing *In re Shurbier*, 134 Bankr. 922(W.D.Mo. 1991). There can be no mistaking Judge Robert A. Mark's intention to discourage the filing of § 523 Complaints proven to be without basis in law and fact:

> "AT&T's case is analogous to a gun-slinger in the wild west without ammunition. It does not survive. This Court is not closing the 523(a)(2)(A) 'town gates' to credit card issuers. Just don't ride into town firing blanks and kicking up dust in the hope of rustling up a settlement. Come in armed with facts to prove fraud or you may be driven out of town with a 523(d) bullet in your tail."

Counsel for Michael Pusateri finds the Court's warning in *Chinchilla* an amusing and a concise analysis of 523(d) apparently not known to Counsel for CFCU..

In summary, caselaw overwhelmingly supports Defendant's position that he is entitled to, and justice mandates, judgment for the full amount of his attorney's fees and costs incurred in defending this baseless and seemingly interminable action alleging fraud in various forms against a totally disabled person who was: (1) current with his payment of ALL of his debts until the case filing despite his debilitating illness; (2) so well regarded by CFCU that his last loan application included the notation: "Gross income: N/A"; and (3) who had paid $17,000 to CFCU to satisfy a shortfall from his trade to a cheaper vehicle within ninety (90) days prior to the case filing - A PREFERENCE not yet recovered from CFCU - conclusive evidence together with the deposition testimony of CFCU employees Karen McGinn and La-Keisha Pennycooke, that neither the CFCU nor its "hired gun" consulted the account history before unloading its "six shooter" at Michael Pusateri. Although the "bullets" fired by CFCU were intended to destroy an alleged fraudulent "bad guy"; its "gunslinger" fired only blanks which nevertheless required Defendant to take all necessary steps to defend himself.

**PLAINTIFF'S BURDEN UNDER 523(d) - SUBSTANTIAL JUSTIFICATION**

As summarized in *Vehlewald*, and applicable in the instant case:

"Section 523(d) requires that the debtor to (sic) initially establish that: (1) the creditor requested a determination that the debt in question was excepted from discharge under § 523(a)(2)**;**(2) the debt in question was a consumer debt; and (3) the debt was in fact discharged. Once the debtor establishes these three elements, the burden then shifts to the creditor to demonstrate that its position was substantially justified in initiating the adversary proceeding or that special circumstances are present that would make the award of attorney's fees and costs unjust."

*Vehlewald, supra,* 2006 Bankr. LEXIS 4052 at 4054-5.

As previously noted, there is no question that the first three (3) elements are present. CFCU requested a determination with regard to discharge under § 523(a)(2) by initiating this Adversary Proceeding. The debt will be determined discharged upon this Court's Order granting CFCU's Motion to Voluntarily Dismiss its Adversary Proceeding. Finally, the debt in question is a consumer debt under 11 U.S.C. § 101(8) because the debt in question was incurred by an individual (Michael Pusateri) via a credit card and was entirely for a personal, family, or household purpose.

This action by CFCU was, and remains, totally devoid of ANY justification. Citing *Arroyo* and *Chinchilla, supra*, and clearly setting the precedent in our own district is the case of *In re: Stahl,* 222 B.R. 497, 1998 Bankr. LEXIS 1862 (W.C.N.C. 1998) in which the late Judge Marvin Wooten granted Defendant's Motion for Summary Judgment discharging Defendant's debt, and granted the FULL amount of Defendant's attorney's fees, costs, and expenses. The *Stahl* case has unbelievable similarities to the instant case, including the following:

- Plaintiff in Stahl was a financial institution which, along with its attorney, had a history of filing adversary complaints in an apparent attempt to elicit settlements
- Plaintiff alleged that the Defendant had no intention to repay her debt to Plaintiff, but provided no evidence in support thereof, the only evidence being presented was Defendant's assertion that she **did** intend to repay Plaintiff, and had made payments until she was no longer able to as she was not working and was overextended.
- Plaintiff in Stahl did not attend the Defendant's § 341 Meeting of Creditors or conduct a Rule 2004 exam.

In a very thorough and well-reasoned opinion, Judge Wooten examined the meaning of "substantial justification" and held that "'Substantially justified' has been interpreted to mean that the plaintiff-creditor had a reasonable basis in both law and fact to seek a determination of nondischargeability. That basis becomes unreasonable if the plaintiff continues to pursue a proceeding after it knew or should have known that it could not prevail". *Id.* at 20. In the instant case, Plaintiff, had it bothered to review its own file, should have known that it could not prevail **at the latest** before filing its first Amended Complaint.

In *Stahl*, Judge Wooten cited six (6) cases in which no substantial justification was found, two (2) of which are particularly on point in the instant case:

1. No substantial justification was found where the creditor conducted no discovery either by Rule 2004 examination or attendance at the § 341 Meeting of Creditors prior to filing the complaint. (citing *In re: Grayson*, 199 B.R. 397 (Bankr. W.D. Mo. 1996).

2. No substantial justification was found when the plaintiff failed to plead fraud with sufficient particularity. (citing *In re: Duplante*, 204 B.R. 49 (Bankr. S.D. Cal. 1996). Mr. Pusateri reminds the Court of his extensive and numerous efforts to require Plaintiff to limit his "shotgun" allegations and define specifically the issues to avoid the necessity and expense of Defendant being forced to do so.

Further, Judge Wooten held that § 523(d) was enacted to prevent complaints like those filed in *Stahl* and in the instant case. In his opinion, he writes:

"[a]gainst the backdrop of the bankruptcy bar's nationwide flat fee practice for debtor representation, the plaintiff and attorney Robert Cooper devised the documents filed for the plaintiff in this and other adversary proceedings solely for the purpose of extracting a settlement and Reaffirmation Agreement from the debtor...(creating) just the dilemna they expected for the debtor's attorney - either settle or lose his shirt defending a costly case for which he may not be paid."

Ultimately, Judge Wooten granted both Defendant's Motion for Summary Judgment as well as 100% of her reasonable attorney's fees and costs incurred defending the proceeding.

In the instant case, depositions taken by counsel for Michael Pusateri of CFCU employees Karen McGinn and La-Keisha Pennycooke clearly prove that CFCU did absolutely no screening prior to pursuing the adversary proceeding. Each of the employees testified that the sole criteria used when referring the matter to Mr. Angus was that Mr. Pusateri's Visa charges exceeded $1,000 in the 90 days prior to filing. (Defendant's Supplementary Evidence in Support of Defendant's Response and Counterclaims in Opposition to Plaintiff's Motion for Voluntary Dismissal of Second Amended Complaint to Determine Dischargeability of Debt - Docket No. 47)

It is clearly and unequivocally shown that counsel for Plaintiff blindly undertook this prosecution of Mr. Pusateri with no additional factual investigation or legal research. Doing neither cannot be considered as "Substantial Justification or "Special Circumstances" rendering an award of fees of costs unjust.

### PLAINTIFF'S BURDEN UNDER 523(d) - REASONABLENESS OF FEES

This action by CFCU was, and remains, totally devoid of justification. To its credit,

CFCU admits same by its desire to dismiss this proceeding. No special circumstances would make an award of attorney's fees and costs unjust. Plaintiff's objection to an award of attorney's fees and costs without making any effort to settle, or even minimize, the physical, emotional and monetary chaos caused by the breadth and depth of unfounded allegations of fraud by CFCU cries out for a Judgment for all fees and costs incurred by Defendant, AND additionally, publication of an opinion showcasing the actions of CFCU as the "Poster Child" for the imposition of substantial 523(d) remedies.

### REASONABLE AND NECESSARY ATTORNEY FEES AND COSTS

Hourly rates charged by David R. Badger, P.A., counsel for Michael Pusateri, in the instant case are as follows:

| Name | Position | Years in Practice | Rate |
| --- | --- | --- | --- |
| David R. Badger | Attorney | 37 | $425 |
| Arathi P. Nobles | Associate | 3 | $150 |
| Jessica R. Adams | Paralegal | 7 | $125 |

In support of these rates, David R. Badger, P.A. respectfully submits Exhibit "H" - biographies of the individuals contributing to Mr. Pusateri's defense in this case.

In further support of Defense Counsel's hourly rates, David R. Badger, P.A., with permission from each of the individuals listed below, submits this chart of fees charged by colleagues within the North Carolina Bankruptcy Bar as evidence of prevailing market rates:

| Attorney | Firm | Position | Years in Practice | Rate |
| --- | --- | --- | --- | --- |
| Langdon M. Cooper | Mullen Holland & Cooper, P.A. | Partner | 40 | $450 |
| Albert F. Durham | Rayburn Cooper & Durham, P.A. | Partner | 34 | $425 |

| | | | | |
|---|---|---|---|---|
| C. Richard Rayburn, Jr. | Rayburn Cooper & Durham, P.A. | Partner | 35 | $550 |
| Max Gardner | Gardner & Gardner, PLLC | Partner | 35 | $375*<br>*Increasing to $425 on 12/1 |
| Constance Young | Johnston, Allison & Hord | Partner | 21 | $375 |
| Shelley K. Abel | Rayburn Cooper & Durham, P.A. | Associate | 4 | $190 |
| John C. Lindley, III | Johnston, Allison & Hord | Associate | 5 | $195 |

As evidenced by the chart above, the hourly rates charged by David R. Badger, P.A. for this case are consistent with market rates for attorneys with comparable expertise and experience in matters of this nature.

A separate billing statement solely for defense of this adversary proceeding will be filed with Defendant's Response to Plaintiff's Motion for Summary Judgment. An additional statement of time expended researching Defendant's remedies and possible discovery issues will likewise will be provided solely to indicate by this Court the additional time spent on related issues for which compensation is NOT being sought from either Plaintiff or Defendant. Review of the billing statements shows nothing more than a vigorous defense to a feckless and "boilerplate" lawsuit which initially sought to determine the entire account non-dischargeable, reduced the damages sought by two-thirds for charges over six months - all outside any presumptive statutory assistance.

**PLAINTIFF COUNSEL'S LIABILITY FOR EXCESSIVE COSTS UNDER 28 U.S.C. 1927**

Michael Pusateri recognizes that this Court has preserved its right to issue sanctions under Rule 9011. As an additional and equally applicable basis for sanctions, Michael Pusateri requests the Court consider 28 U.S.C. § 1927 which provides:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

It is Michael Pusateri's position that Counsel for CFCU, Rod Angus and Heather Culp, by failing to do any investigation prior to filing the initial complaint, the filing of two (2) separate amended complaints, and ultimately voluntarily dismissing its claims nine (9) months later, unreasonably and vexatiously multiplied the proceedings in this case. Even the two-step procedure proposed by Plaintifffor determining sanctions unnecessarily and substantially increases the costs of final resolution at a proceeding that should not have been filed in the first place.

The Fourth Circuit has upheld a grant of sanctions under 28 U.S.C. 1927 even where the court finds no violation of Rule 11. <u>Mitchell v. Sonies</u>, 1995 U. S. App. LEXIS 13659 (4th Cir. 1995)**.** In <u>Mitchell</u>, the Fourth Circuit held that a lawyer's actions do not need to be "unreasonable and vexatious" to justify sanction sunder § 1927, rather it is enough that a lawyer act "recklessly or in bad faith".

Rod Angus, Counsel for CFCU, has a pattern of filing "boilerplate" adversary proceedings in bankruptcy cases in an apparent attempt to elicit settlement offers while having no intention to litigate the legal and factual allegations therein. A review of PACER for the Eastern District of Virginia reveals that Mr. Angus filed at least 8 similar adversary complaints in the same timeframe as the instant Complaint was filed, eliciting settlements from at least 6 of the 8 debtors. As previously stated, attached hereto as Exhibit "G " is a compilation of four (4) nearly identical complaints with the identical portions highlighted.

In the instant case, Mr. Angus never did ANY pre-filing investigation. Neither of Plaintiff's Counsel apparently ever looked at the CFCU file to determine any foundation for the

myriad allegations of fraudulent conduct. Various motions by Defendant should have prompted a cursory review of the facts and applicable law. A simple perusal of CFCU's file for Michael Pusateri would have revealed:

1. A 16-year, multiple account history with no late payments.
2. No missed payments to CFCU.
3. Minimum payments to CFCU generally in excess of minimum payments due.
4. A $17,000 preferential payment to cure an "upside down" automobile account within ninety (90) days of filing;
5. Credit Committee comments landing Defendant's account history and waiving specific information required of the rest of the 50,0000 or so other members of CFCU.

Instead of the required due diligence, CFCU's 800 plus page file was delivered, admittedly untouched by Mr. Angus, to Counsel for Michael Pusateri at Mr. Pusateri's deposition, on June 4, 2009, six months after filing the Amended Complaint and four months after filing the Second Amended Complaint. Had he looked at the allegedly false Visa application and approvals alone, he should have rejected the case and returned it to CFCU (a 50,000 member credit union with over $490 million in assets seemingly intent to punish anyone, dead or alive, who simply charged over $1,000.00 for any services or products purchased within the 90 days of the member's bankruptcy or death by branding the member's actions as fraudulent in public adversary proceedings filed in virtually every CFCU account that violated their legally baseless and sole criteria). The simple and blatantly obvious truth is that this entire Adversary Proceeding could have been avoided had CFCU or its counsel reviewed the CFCU account history, attended Mr. Pusateri's 341 meeting of creditors and/or scheduled a single Rule 2004 examination, or run a credit report - all of which would have clearly indicated that there was no fraud, no false financial statements, no overstatement of income, no luxury purchases, no fraudulent misconduct of any kind with regard to the Visa account. Plaintiff counsels' failure to conduct the most simplistic investigation aided and abetted CFCU on this wild goose chase which Michael Pusateri was forced to defend vigorously in the face of the constantly changing

legal theories alleged in the three (3) Complaints. The pleadings and their various allegations represent an adult version of "WackAMole" which unduly complicated the case.

As a colleague so eloquently phrased it, it appears that Mr. Angus is using Mr. Pusateri's case to obtain his Continuing Legal Education in dischargeability cases while expecting Mr. Pusateri to foot the total bill for his tuition. Mr. Angus and the CFCU should receive a grade of "J" for their efforts (as in Judgment for the total amount of attorney fees and costs incurred by this disabled debtor).  To the extent that Local Counsel blindly abetted the malpractice of Mr. Angus, appropriate sanctions should also be assessed in the form of disgorgement of any fees charged.

## EQUITABLE REMEDIES UNDER SECTION 105

In an effort to reach an expedited resolution to the open issues in this case, Mr. Pusateri agreed not to pursue any of his previously preserved counterclaims. Counsel for Michael Pusateri would like to stress to this Court that this proceeding  added to his already dire financial situation and lifelong disability, has caused Mr. Pusateri overwhelmingly mental anguish and suffering, together with physical side effects including weight loss and anxiety. Counsel for Mr. Pusateri urges this Court to make an award to Mr. Pusateri to compensate him for this extended, agonizing, expensive and unnecessary ordeal under the equitable powers reserved to this court under § 105(a) of the bankruptcy code.

Section 105(a) of the Bankruptcy Court recognizes the inherent power of the Bankruptcy Court, permits sanctions to be imposed to implement the provisions of the Bankruptcy Code, prevent an abuse of the bankruptcy process, and generally requires a finding of bad faith, which is present herein in the form of reckless pleading of fraud in various forms and consistent

attempts by Plaintiff's Counsel to shift blame for a vigorous defense to Defendant's attorney.

## CONCLUSION

Defendant respectfully submits that the undisputed evidence indicates there is no issue of material fact, that Defendant is entitled to Summary Judgment on all counts as a matter of law pursuant to Bankruptcy Rule 7056, a determination that the Complaints were all feckless and totally unsubstantiated, and that no special circumstances exist to preclude Judgment in favor of Defendant for 100% of his attorney's fees, expenses, and costs in defending this action pursuant to U.S.C.§523(d) and 28 U.S.C. 1927 as well as equitable remedies under U.S.C. § 105.    105

WHEREFORE, Michael Pusateri prays the Court that:

1. The Court grant Michael Pusateri his costs and attorney's fees in accordance with 11 U.S.C. § 523(d), 28 U.S.C. § 1927, and 11 U.S.C. 105 together with such fee enhancement as the Court deems appropriate without the necessity of additional and unnecessary pleading and hearings;

2. The Court grant Michael Pusateri reasonable expenses and attorney's fees in presenting this Motion;

3. The Court reconsider its reservation of Rule 9011 and issue an Order to CFCU to show cause why it should not be sanctioned; and

4. The Court grant to Michael Pusateri such other and further relief as to the Court seems just and proper.


Dated: 11/16/09              /s_____
                                        David R. Badger
                                        N.C. State Bar #156
                                        Arathi P. Nobles

        N.C. State Bar #35480
DAVID R. BADGER, P.A.
Attorneys for Defendant
2108 South Boulevard
Suite 118 Atherton Lofts
Charlotte, North Carolina  28203
Telephone:    (704) 375-8875
Facsimile:    (704) 375-8835

Case 08-03149    Doc 59    Filed 11/16/09    Entered 11/16/09 19:07:44    Desc Main
            Document      Page 19 of 19